830 F.2d 193
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Brenda J. DEPRIEST, Plaintiff-Appellant,
v.
DEPARTMENT OF HUMAN SERVICES OF the STATE OF TENNESSEE,
Defendant-Appellee.
 No. 86-5920
 United States Court of Appeals, Sixth Circuit.
 October 1, 1987.
 
 Before WELLFORD, MILBURN and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a district court judgment dismissing the plaintiff's Title VII claim. The plaintiff contends that the defendant employer has not shown that it could not reasonably accommodate her religious observances without suffering 'undue hardship' within the meaning of 42 U.S.C. Secs. 2000e-2(a)(1) and 2000e(j) (1976). Because we agree with the district court that the defendant did make the necessary showing of undue hardship, we shall affirm the district court's judgment.
 
 
 2
 The plaintiff, Mrs. Brenda DePriest, was hired by the Department of Human Services of the State of Tennessee on November 1, 1977. In February of 1978 she began working in the Child Support Unit of Region V. The plaintiff was a member of the Worldwide Church of God, and she wished to participate in certain religious observances of that church that were scheduled to be held at the Lake of the Ozarks, Missouri, between sunset on October 15, 1978, and sunset on October 23 of that year. On September 18, 1978, the plaintiff asked her supervisor, Mrs. Schmidt, to approve a request for leave from work on October 2 and 11, and October 13 through 24. Under the terms of her employment with the Department of Human Services, the plaintiff was entitled to accumulate one day of annual paid leave and one day of paid sick leave during each month that she worked for the Department. At the time of her request the plaintiff had already taken all of her accumulated annual and sick leave, 22 days, and had used an additional three days of special unpaid leave.
 
 
 3
 Mrs. Schmidt discussed the request with her own supervisor, and with the latter's concurrence granted the plaintiff leave for October 2 and 11, but denied the request for leave from October 13 through 24. The plaintiff offered to work overtime at her regular rate of pay both before and after the trip, but this proposal was not accepted. She then stated that she felt compelled to attend the observance in Missouri and would do so even without approval of her leave request. She was warned that her employment would be terminated if she did. The plaintiff nevertheless made the trip to Missouri. When she returned, she found a letter from the Commissioner of the Department of Human Services terminating her employment effective October 23, 1978.
 
 
 4
 In July of 1981 the plaintiff filed a complaint under 42 U.S.C. Sec. 2000e, alleging discrimination on the basis of her religion. Upon joint motion of the parties the case was placed on the court's 'retired' docket pending the conclusion of two state proceedings, one for denial of unemployment benefits and one (before the Tennessee Civil Service Commission) challenging the termination. The case was restored to the district court's active docket on March 4, 1985, after the state proceedings had been decided adversely to the plaintiff. After assignment to a magistrate, both parties filed motions for summary judgment. The magistrate concluded that the plaintiff had established a prima facie case of religious discrimination and that an evidentiary hearing was necessary.
 
 
 5
 The magistrate found, following such a hearing, that the Child Support Unit consisted of only two persons, the plaintiff and Mrs. Schmidt. The plaintiff was the only secretary in the office, and there was testimony that it would take approximately two weeks to train someone else to perform the plaintiff's job. The plaintiff's previous absences had resulted in a small backlog of work in the unit. Mrs. Schmidt and her superior, Mrs. Oliver, testified that if the plaintiff had not exhausted all of her accumulated leave, the requested leave probably would have been granted. They also stated that it might not have been because of the backlog.
 
 The magistrate concluded that
 
 6
 'The department attempted to accommodate plaintiff's request by granting her leave for October 2 and 11, but simply could not withstand her further absence for another ten working days, in light of her previous leave record and its resulting backlog. Under the circumstances, her request for leave for October 13 through 24 could not be reasonably accommodated, and the department's denial of said request did not violate Title VII.'
 
 
 7
 The district court adopted the magistrate's report and recommendation, noting also that Mrs. Schmidt and Mrs. Oliver had testified that the office 'was under pressure on federal and state levels to ensure that progress was taking place on a then recently instituted program with the Child Support Unit . . .. Specifically, it appears that defendant was concerned that a portion of the AFDC grant could be forfeited if the program failed to show sufficient progress.' The court credited the testimony of Mrs. Schmidt and Mrs. Oliver that training a temporary replacement for the plaintiff would have taken approximately two weeks, and that an offer by the plaintiff to work overtime before and after the leave had been rejected because much of the plaintiff's work required the assistance of Mrs. Schmidt, who would have been required to work overtime as well. The court concluded that
 
 
 8
 'defendant was unable to make reasonable accommodations to plaintiff's leave request without undergoing 'undue hardship' as that term has been judicially defined. The options available to the defendant included training another individual to fill in for plaintiff during her absence, leaving plaintiff's position vacant during her absence, or permitting plaintiff to work overtime before and/or after her trip. Each of these alternatives posed more than a de minimis harm to defendant.'
 
 
 9
 The district court dismissed the complaint, and the plaintiff appealed.
 
 
 10
 42 U.S.C. Sec. 2000e-2(a)(a) makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ..' 42 U.S.C. Sec. 2000e(j) defines 'religion' as including 'all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.'
 
 
 11
 The Supreme Court has construed this language as requiring the employer to bear no more than a de minimis burden or cost in order to accommodate the employee's religious practice. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977).
 
 
 12
 The identified options through which the defendant might have accommodated the plaintiff included training another individual to perform the plaintiff's work during her absence, permitting the plaintiff to work overtime before and after her trip, and leaving the position vacant, with Mrs. Schmidt possibly doing some of the plaintiff's work. The district court correctly found that each of these alternatives would have imposed more than a de minimis burden on the defendant.
 
 
 13
 The plaintiff's supervisors testified that it would probably have taken two weeks to train someone to perform the plaintiff's duties. We agree with the district court that this would have constituted more than a de minimis burden. The second alternative, the undisputed testimony indicated, would have required Mrs. Schmidt to work overtime. This alternative would have imposed a substantial burden on Mrs. Schmidt, and thus on the defendant. The third alternative would have resulted in an accumulation of work to be added to the existing backlog, and if Mrs. Schmidt were to have done some of the plaintiff's work, Mrs. Schmidt's own work would have suffered.
 
 
 14
 The plaintiff makes several arguments in support of her assertion that any hardship suffered would not have been 'undue.' First, she points to testimony that a person having enough seniority to be eligible for 36 days a year of annual and sick leave would not have been disqualified for the position held by the plaintiff. Based on this testimony the plaintiff asserts that her requested leave would have imposed no more hardship on the defendant than the defendant would have been willing to suffer had the plaintiff had more accumulated leave. Mrs. Oliver testified, however, that even if someone holding the plaintiff's position had accumulated leave available, she might not be permitted to take it at a particular time if the workload did not permit it.
 
 
 15
 The plaintiff also points to the fact that Mrs. Schmidt herself had earlier taken six consecutive weeks of maternity leave. The plaintiff contends that this shows the unit would not have suffered unduly if the plaintiff had been given the shorter leave she requested. As Mrs. Schmidt testified, however, she had made plans for her absence and had 'stayed in contact by phone during that time period that [she] was off so that questions could be answered . . ..'
 
 
 16
 The plaintiff further notes that following her discharge her position was vacant for twenty-four days before the defendant transferred someone else into it. The fact that the defendant might have been burdened less by allowing the plaintiff to take the leave than by dismissing her does not suggest, however, that the burden imposed by a leave would not have been significant.
 
 
 17
 Next, the plaintiff contends that the defendant did not make the required effort to accommodate her religious observance. Citing McDaniel v. Essex International, Inc. (I and II), 571 F.2d 338 (6th Cir. 1978), and 696 F.2d 34 (6th Cir. 1982), and Draper v. United States Pipe and Foundry Co., 527 F.2d 515 (6th Cir. 1975), the plaintiff appears to urge that merely considering possible accommodations and concluding that all will cause undue hardship cannot constitute a sufficient attempt to accommodate. This contention clearly lacks merit.
 
 
 18
 In Draper, although the court stated that it was 'somewhat skeptical of hypothetical hardships that an employer thinks might be caused by an accommodation that never has been put into practice,' the court expressly conceded that 'it is possible for an employer to prove undue hardship without actually having undertaken any of the possible accommodations.' 527 F.2d at 520. In McDaniel II the court expressed the employer's burden as one of showing that 'an accommodation . . . would have involved undue hardship,' 696 F.2d at 37 (emphasis supplied), not of showing that it did cause undue hardship. Surely Congress did not intend that an employer must actually undertake an accommodation that will inevitably cause undue hardship.
 
 
 19
 Under the circumstances of this case, the employer simply did not have much flexibility. The unit in which the plaintiff worked consisted of only two people. It is uncontested that no one else performed the same duties as the plaintiff, and there was no possibility of moving the plaintiff to another shift or another position. Mrs. Oliver testified that she and Mrs. Schmidt 'talked this over carefully' and concluded not only that the plaintiff had used more than her alloted annual leave, but also that 'two more weeks would put us in very bad shape.' We agree with the district court that the defendant has shown it would have suffered undue hardship if it had granted the plaintiff's request for leave.
 
 
 20
 Finally, we find no merit in the plaintiff's contention that the defendant discriminated against her by failing to apply the State's progressive discipline policy. The rules provide that an employee absent from work for more than three consecutive business days without approval shall be considered as having resigned. Tenn. Civil Service Rules and Regulations Chapter 1120-2-2-2.13(4). The plaintiff's unapproved absence for more than three consecutive business days constituted a resignation.
 
 
 21
 The district court's judgment is AFFIRMED. The defendant's request for damages under Federal Rule of Appellate Procedure 38 is denied.