Gwendolyn I. COOPER,
Plaintiff–Appellant,

v.

OAK RUBBER COMPANY and John
Doe, Supervisor, Defendants–
Appellees.

No. 92–4039.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 5, 1993.

Decided Feb. 9, 1994.

**1376**

Edward L. Gilbert, Akron, OH (argued and briefed), for plaintiff-appellant.

Mark J. Valponi (argued and briefed), Ronald A. Mingus, Kelley, McCann & Livingstone, Cleveland, OH, for defendants-appellees.

Before: NORRIS and SUHRHEINRICH, Circuit Judges; and JOINER, Senior District Judge.*

JOINER, Senior District Judge, delivered the opinion of the court, in which NORRIS, Circuit Judge, joined.

SUHRHEINRICH, Circuit Judge, concurred in the result only.

CHARLES W. JOINER, Senior District Judge.

Plaintiff Gwendolyn Cooper appeals from the judgment entered in favor of her former employer, Oak Rubber Co. ("Oak"), in this Title VII religious discrimination case. Cooper is a Seventh Day Adventist who refused to work on Saturdays to observe the Sabbath, and then resigned, allegedly to avoid disciplinary suspension and discharge. On appeal, Cooper challenges the district court's conclusions that she did not establish a prima facie case of discrimination, that Oak reasonably accommodated her religious beliefs, and that Oak could not have relieved Cooper of all Saturday work responsibility without undue hardship. We affirm on the last stated ground.

**I.**

**A.**

Oak was a manufacturer of industrial vinyl gloves. Oak operated six production machines around the clock with three shifts of workers, and each machine was required to be staffed with six glove strippers and one packer. The machines operated continuously through the employees' breaks and lunch periods. Oak scheduled extra workers to substitute for the employees on break, and also to cover for employees who were absent or on vacation. If Oak did not have enough workers for each machine, it was forced to shut down the affected machine, suffering a loss of production.

To alleviate a serious absenteeism problem, Oak instituted a policy pursuant to which employees accumulated points for unexcused absences. The list of "excused" absences included a number of reasons why an employee might occasionally miss work

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

(e.g., funeral leave, military leave and personal emergencies), but did not include observance of the Sabbath. Pursuant to the policy, an employee who reported in advance of the shift that she would be absent accumulated one point for that absence. The accumulation of six points within a one-year period resulted in a verbal warning; eight points resulted in a written warning; ten points resulted in a three-day suspension; and twelve points resulted in discharge.

Oak's employees were covered by a collective bargaining agreement which had a management rights clause vesting in Oak management of the plant and the right to hire, discipline and discharge, except to the extent that those rights were expressly modified or restricted by the agreement. The absenteeism policy was adopted pursuant to this clause. The collective bargaining agreement further provided that a regularly scheduled workweek began on Monday, and that work performed on the "sixth day" in a regularly scheduled work week was paid at time and one half.

Saturday work was scheduled in one of two ways. For a "full production Saturday," i.e., one on which all machines were scheduled to be operated, Oak gave its employees 48 hours notice, thus making it mandatory for all employees on all shifts to report for work. If, after the employees reported to work, Oak determined that extra workers were available, employees could exercise "work options" to go home without pay. This option was available on the basis of seniority. If all of the machines were fully operational, it generally was the case that all employees who reported for their shifts were required to work. Oak also scheduled "less than full production" Saturdays on which it planned to operate only some of its machines. Employees could exercise seniority-based work options in advance of such a Saturday to avoid the necessity of reporting for work.

When Oak ran a five-day production week, a small crew cleaned the machines on Saturday. When Oak ran a six-day production week, the crew cleaned on Sunday. This crew consisted of workers who had worked the previous five or six days. Pursuant to the collective bargaining agreement, work performed on Sunday was paid at double-time rates.

Cooper was hired by Oak in 1975 as a glove stripper/packer, and worked the night shift, from 11:00 p.m. to 7:00 a.m. In January 1984, Cooper attended her first Seventh Day Adventist service, and attended regularly thereafter. Cooper knew that the church prohibited all work from sundown on Friday until sundown on Saturday. Cooper nonetheless worked on numerous Saturdays in 1984, but was able to attend church services after leaving work Saturday morning. Cooper was baptized in December 1984, and continued to work on Saturdays after her baptism. She worked a total of nine Saturday shifts in 1985, and reported for work on seven other occasions, but exercised work options to leave early. Oak did not schedule any full production Saturdays between July 1985 and November 1986.

In November 1986, Cooper exercised her seniority right to transfer to the day shift. Coincidentally, one day later, Oak announced that the following Saturday was scheduled for full production. Cooper informed her supervisor that she would not work because of her religious beliefs. The supervisor told her that she did not know from week to week whether Saturday work would be scheduled, and that there was nothing she could do for her.

Cooper did not work that Saturday or the remaining full production Saturdays in 1986. She received a verbal warning when she accumulated six points for unexcused absences. In January 1987, Cooper talked to her new supervisor about her religion's prohibition against working on Saturdays. The supervisor suggested that Cooper use her accrued vacation days to avoid working on mandatory Saturdays. At trial, the supervisor explained that up to four employees could be on vacation on any given full production Saturday. Although Cooper had seventeen accrued vacation days, she was unwilling to use them in this manner. Cooper's supervisor also suggested that she trade back to the night shift so that she could attend services on Saturday mornings. This alternative was unacceptable to Cooper because it would require her to violate the prohibition against

working on the Sabbath. Cooper testified that although she had been willing to work the Friday night shift prior to July 1985, her commitment to her church had grown since that time and prevented her from continuing to do so.

Cooper continued to miss full production Saturdays and continued to accumulate absence points. Mandatory overtime was scheduled for Saturday, April 11, and Cooper resigned on April 10 to avoid accumulating her tenth absence point and the resulting disciplinary suspension and what she claimed would be her inevitable termination from employment. One month after Cooper's resignation, Oak hired an additional 18 glove strippers/packers, enhancing its ability to maintain production despite work absences.

### B.

Cooper filed suit under Title VII, claiming that she was disciplined and constructively discharged because she adhered to her sincere religious beliefs against working on the Sabbath, and claiming further that Oak had not accommodated her religious beliefs and could accommodate her beliefs without undue hardship. Following a two-day bench trial, the district court made its findings of fact and conclusions of law, dismissing Cooper's suit on a number of independent bases.

The district court held that Cooper had not established a prima facie case of religious discrimination because she had not demonstrated that she had a sincerely held religious belief that was in conflict with a Saturday work requirement, and because she was not constructively discharged from employment. The court found that Cooper could have avoided discharge by using her accrued vacation days to avoid Saturday work, and held that a reasonable employee would have used her accrued vacation days rather than resign. The district court further held that Oak reasonably accommodated Cooper's beliefs by offering her the options of using vacation days to avoid working full production Saturdays, or trading shifts to avoid working during the day on Saturday. Finally, the district court concluded that Oak could not have relieved Cooper of all Saturday work responsibility without suffering undue hardship, *i.e.*, the need to hire another employee or a resulting loss of production.

### II.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion[.]" 42 U.S.C. § 2000e–2(a). The term religion includes all aspects of religious observance and practice, "unless an employer demonstrates that he is unable to reasonably accommodate to an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

■ The employee bears the burden of establishing a prima facie case, and sustains that burden by showing that he holds a sincere religious belief that conflicts with an employment requirement; that he has informed his employer of the conflict; and that he was discharged or disciplined for failing to comply with the conflicting requirement. *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir.1987), *cert. denied*, 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988). Once a prima facie case is established, the burden shifts to the employer to show that it could not reasonably accommodate the employee without undue hardship. The reasonableness of an employer's attempt to accommodate is determined on a case-by-case basis. If the employer's efforts fail to eliminate the employee's religious conflict, the burden remains on the employer to establish that it is unable to reasonably accommodate the employee's beliefs without incurring undue hardship. *Id.* To require an employer to bear more than a *de minimis* cost in order to accommodate an employee's religious beliefs is an undue hardship. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84, 97 S.Ct. 2264, 2277, 53 L.Ed.2d 113 (1977).

■ The district court's conclusion that Cooper did not hold a sincere religious belief against working on Saturdays is a finding of fact which is reviewed for clear error, and this court will not disturb such a finding unless, after examining the entire record, it

is left with the definite and firm conviction that a mistake has been made. *Smith,* 827 F.2d at 1086. We are so persuaded in this case. In scrutinizing Cooper's sincerity in objecting to Saturday work, the district court focused on the fact that Cooper had worked the Friday night shift for approximately seven months after her baptism in 1984. However, seventeen months intervened before Cooper was next required to work on a Saturday, and Cooper's undisputed testimony was that her faith and commitment to her religion grew during this time. There was no evidence that Cooper's activities on Saturdays were inconsistent with her religious beliefs or otherwise indicated that Cooper did not genuinely and sincerely adhere to the tenets of her faith. Under these circumstances, we conclude that the district court erred in finding that Cooper's religious beliefs were not sincere, and in holding that Cooper had not established a prima facie case of discrimination.[1]

■ This case thus turns on whether Oak reasonably could have accommodated Cooper's religious objection to Saturday work without undue hardship to its business. We are persuaded that the court erred in concluding that Oak reasonably accommodated Cooper's beliefs by offering her the option of trading her Saturday day shift for the Friday night shift, and by offering her the option of using accrued vacation. The shift trade offer accommodated only one of Cooper's concerns, that of missing church service on Saturday, but failed to address her principal objection to working on Saturday. An employer does not fulfill its obligation to reasonably accommodate a religious belief when it is confronted with two religious objections and offers an accommodation which completely ignores one. *EEOC v. University of Detroit,* 904 F.2d 331, 335 (6th Cir.1990).

Oak's suggestion that Cooper avoid working on full production Saturdays by using her accrued vacation days stands on different ground. While this alternative addressed Cooper's objection to working on the Sabbath, the relief it afforded was entirely dependent on whether the number of full production Saturdays scheduled throughout the year eventually exceeded Cooper's accrued vacation. We recognize that use of vacation time legitimately may be required to allow an employee to avoid work on religious holidays or, in combination with other methods, to allow an employee to regularly avoid working on the Sabbath. *See Getz v. Pennsylvania,* 802 F.2d 72 (3d Cir.1986); *United States v. Albuquerque,* 545 F.2d 110, 113–14 (10th Cir. 1976), *cert. denied,* 433 U.S. 909, 97 S.Ct. 2974, 53 L.Ed.2d 1092 (1977). Under appropriate circumstances, this use of a portion of an employee's vacation entitlement may be reasonable. In this case, however, Cooper was faced with the choice of working on the Sabbath or potentially using all of her accrued vacation to avoid doing so. An employer who permits an employee to avoid mandatory Sabbath work only by using accrued vacation does not "reasonably accommodate" the employee's religious beliefs. Such an employee stands to lose a benefit, vacation time, enjoyed by all other employees who do not share the same religious conflict, and is thus discriminated against with respect to a privilege of employment.[2]

■ The dispositive issue is whether Oak could have made any accommodation of Cooper's religious objection to working on Saturdays without suffering undue hardship. It is evident that the only accommodation acceptable to Cooper would have been the elimination of any requirement that she work or report for work on Saturdays.[3] She con-

1. We need not decide whether Cooper was constructively discharged for failing to comply with Oak's Saturday work requirement, because there is no dispute that she was disciplined. Cooper thus established all elements of her prima facie case.

2. Cooper had 17 accrued vacation days when she resigned. The district court found that Oak scheduled 14 mandatory Saturdays between April 11 and December 31, 1987. From the benefit of hindsight, the district court determined

that if Cooper had utilized her vacation days for mandatory Saturdays in 1987 and work options for the other scheduled Saturdays, Cooper would have avoided accumulating twelve points and could have kept her job. Of course, Cooper could not have known this when she resigned.

3. This is not a case like *EEOC v. Arlington Transit Mix, Inc.,* 957 F.2d 219 (6th Cir.1991), where exploring voluntary seniority waivers would have been helpful in resolving the conflict. Cooper makes no claim that she was unsuccessful in

tends that Oak simply could have amended its absence policy to add observance of the Saturday Sabbath as an excused absence, or permitted her to work on Sunday rather than Saturday. Either alternative necessarily would have resulted in one fewer employee reporting for work on full production Saturdays.

The district court found that Oak would have had to hire an additional worker to work the entire week in order to allow Cooper to take every Saturday off. This finding is supported by the record and is not clearly erroneous. Oak's plant manager and human resources manager testified that the company's production needs required that all employees on each shift work on full production Saturdays. While Oak "overstaffed" these work days in the sense that more than the seven employees per machine were required to report, overstaffing was necessary to keep the machines running through break and lunch periods, as well as to cover for absences and vacations. If a machine were understaffed by even one worker, that machine would have to have been shut down. Title VII does not require an employer to bear more than a *de minimis* cost in accommodating an employee's religious beliefs. Either alternative available to Oak, the hiring of an additional worker or risking the loss of production, would have entailed more than a *de minimis* cost, relieving Oak of the obligation to accommodate. *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 84, 97 S.Ct. 2264, 2277, 53 L.Ed.2d 113 (1977).

Cooper points to the fact that Oak hired 18 additional employees one month after she resigned, claiming that Oak had the capacity to maintain production despite one worker's absence. Oak's vulnerability to production losses no doubt decreased with this addition to its workforce. However, this was not the situation which existed when Cooper was employed, and Oak was under no legal obli-

gation to incur the costs associated with the addition of even one employee to allow Cooper to avoid all Saturday work, much less the cost of adding 18 employees.

Finally, it is no answer to suggest that Oak could have permitted one fewer employee to be on vacation or otherwise absent in order to allow Cooper every Saturday off. As noted by the Court in *Hardison,* it "would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preferences of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others[.]" 432 U.S. at 81, 97 S.Ct. at 2275.

In sum, we are persuaded that the district court's ultimate disposition of this case was correct.[4]

**AFFIRMED.**

---

exercising work options on less than full production Saturdays. Seniority waivers would not have assisted Cooper on full production Saturdays because *all* employees were required to report for work, and Cooper refused to do so. Thus, even if Oak found itself overstaffed on any given mandatory Saturday, Cooper was not present to exercise a work option to leave.

**4.** We find no merit to Cooper's contention that the court erred in admitting into evidence the Ohio Civil Rights Commission's finding of no probable cause. We review the admission of evidence for abuse of discretion, and find none here where the contested evidence was not given preclusive effect, and where the case was tried to the judge and not to the jury.