Walter DIEHL, Plaintiff–Appellant,

v.

TELE–SOLUTIONS, INC.; Deane M. Wurst; and Donald Olenik, Defendants–Appellees.

No. 93–3911.

United States Court of Appeals, Sixth Circuit.

Submitted Dec. 8, 1994.

Decided June 14, 1995.

Alan S. Belkin (briefed), Shapiro, Turoff, Gisser & Belkin, Cleveland, OH, for plaintiff-appellant.

Ira J. Mirkin (briefed), Green, Haines, Sgambati, Murphy & Macala, Youngstown, OH, for defendants-appellees.

Before: NORRIS and SILER, Circuit Judges; NEWBLATT, District Judge.*

ALAN E. NORRIS, Circuit Judge.

Plaintiff, Walter Diehl, appeals from the district court's entry of judgment for defendants in this Title VII employment discrimination claim which was tried to the court. The resolution of this appeal requires us to revisit the rules regarding the burdens of production and persuasion that govern such actions. For the reasons that follow, we conclude that the district court properly dismissed Diehl's claim.

I.

Diehl initiated this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, after he was fired in August 1988 from his position as an installer for defendant, Tele–Solutions, Inc. ("Tele–Solutions"). At the time, Diehl, who is black, had been working for Tele–Solutions for more than two years.

Defendant Deane Wurst, president of Tele–Solutions, conceded at trial that Diehl was the only black employee in the company's service department and, after his termination, was replaced by Walter Wilfong, a white male.

The crux of this case, of course, involves the reason for Diehl's termination. He alleged that the company's decision was im-

---

* The Honorable Stewart Newblatt, United States District Judge for the Eastern District of Michi-

gan, sitting by designation.

properly based upon race while Tele–Solutions contends that his repeated attendance problems justified its action.

During cross-examination, Diehl acknowledged that on one occasion in 1987 he required his crew on a job site to quit early so that he could be home by late afternoon, with the result that the crew had to return the next day to complete the work rather than finish the job that afternoon. Other incidents included extending a vacation without notifying the company and failing to obtain permission before going to a dentist. On at least one occasion, Tele–Solutions issued a letter of warning to Diehl threatening "immediate termination" in the event of future "failure to report at the appropriate reporting time."

The event that precipitated Diehl's dismissal occurred on August 11, 1988, when he allegedly left work early without notifying his supervisor, defendant Donald Olenik. Diehl contends that he received permission to leave, an assertion corroborated to some extent by Robert Malagisi, an employee of the Mahoning County [Ohio] Department of Human Services, the job site where Diehl was working on the day in question.

At the close of Diehl's case, counsel for Tele–Solutions moved for judgment, arguing that nothing in the record supported the inference that race played a part in Diehl's termination. The trial court agreed and explained its decision in these terms:

> It may be that the plaintiff has put forth a prima facie case through the use of inferences and all possible evidence with respect to matters other than the termination. However, if the plaintiff has made out a prima facie case, I do not see any evidence that the treatment or the disparate treatment with respect to termination, if there was such, was racially motivated. That must be shown.

> Through the cross-examination of the plaintiff himself, the employer has put forward the non-racial basis for the plaintiff's termination and the Court finds no evidence whatsoever that the basis was pretextual.

On appeal, Diehl contends that the trial court erred in granting judgment at this stage of the proceedings. In his view, a defending employer must articulate a race-neutral reason for a termination during its own case in chief and may not do so during the plaintiff's case by cross-examining the plaintiff's witnesses.

## II.

■ The evidentiary framework normally utilized in the analysis of a Title VII claim is well-established. Initially, the plaintiff must set forth a prima facie case of disparate treatment by a preponderance of the evidence, after which the burden shifts to the employer to articulate a nondiscriminatory reason for its action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Assuming that the defendant meets this burden, it then falls to the plaintiff to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas* ). Although this framework of shifting burdens works to ensure that the "plaintiff will have a full and fair opportunity to demonstrate pretext," he "retains the burden of persuasion." *Id.* at 256, 101 S.Ct. at 1095.

■ Nothing in this methodology prevents an employer from presenting a race-neutral reason for a contested action during the plaintiff's case. We reject, as have a number of other circuits, a reading of *McDonnell Douglas* and *Burdine* that imposes a "rigid, three-step proof process in Title VII cases." *Dance v. Ripley,* 776 F.2d 370, 373 (1st Cir. 1985) (citing cases); *see also Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173, 174 (8th Cir.1992) (rules of production and persuasion in discrimination cases not to be applied "woodenly"); *Mitchell v. Office of Los Angeles County Superintendent of Schs.,* 805 F.2d 844, 846 (9th Cir.1986), *cert. denied,* 484 U.S. 858, 108 S.Ct. 168, 98 L.Ed.2d 122 (1987).

Diehl appears to confuse the *McDonnell Douglas* production-shifting paradigm with the order of proof in a trial. Since the ultimate burden of persuasion remains with the plaintiff, a defendant is not required to put on its case at the close of the plaintiff's case in chief if the defendant has already met its evidentiary burden by producing evidence of a nondiscriminatory reason for its conduct through the cross-examination of the plaintiff's witnesses.

Here, the district court properly considered the totality of the evidence presented during Diehl's case and found it wanting. The court was not limited simply to assessing whether he had made out a prima facie case. Rather, the court considered all the evidence and accepted Tele–Solutions' race-neutral reason for the termination. That the company advanced Diehl's attendance record as a legitimate reason for his dismissal should have come as no surprise, and nothing prevented him from calling witnesses during his case in chief in an effort to demonstrate that this reason was pretextual.

### III.

The judgment of the district court is **affirmed.**