78 F.3d 585
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dollie Mae MASSEY, Plaintiff-Appellant,
v.
SHELBY COUNTY SHERIFF'S DEPARTMENT; A.C. Gillis, Jr.,
Defendants-Appellees.
 No. 94-6463.
 United States Court of Appeals, Sixth Circuit.
 Feb. 29, 1996.
 
 Before: KENNEDY and SUHRHEINRICH, Circuit Judges; GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Dollie Mae Massey sued her former employer, the Shelby County Sheriff's Department, and A.C. Gillis, Jr., Sheriff of Shelby County, alleging that she was discharged because of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-e17 (West 1994). After a bench trial before a magistrate judge, the magistrate judge found in favor of defendants. Plaintiff appeals from this decision pursuant to 28 U.S.C.A. § 636(c)(3) (West 1993). We hold that the magistrate judge ruled correctly on each of plaintiff's assignments of error. AFFIRMED.
 
 BACKGROUND
 
 2
 Plaintiff is an African-American woman formerly employed as a deputy sheriff with the Shelby County Sheriff's Department ("Department"). Beginning in early 1982, plaintiff developed keloids.[1] As a result, plaintiff's physician recommended that plaintiff not have contact with individuals where there was a chance of violence and further injury to herself.
 
 
 3
 Prior to 1986, the Department accommodated plaintiff's condition by assigning her to positions where there was minimal likelihood of contact with violent individuals. In mid to late 1986, the Department revised its personnel policies to require each employee to be fully functioning within his or her job. Gillis testified that the Department would attempt to accommodate injuries suffered by deputy sheriffs, but only on a temporary basis.
 
 
 4
 In December 1986, plaintiff was assigned to the General Sessions Criminal Court Division to act, presumably, as court security. Plaintiff objected to this assignment in part because it would require her to come in contact with prisoners and thus be in danger of an attack. Gillis presented plaintiff with three alternatives, one of which included becoming a civil process server. Plaintiff rejected all three alternatives and was terminated effective January 23, 1987.
 
 
 5
 Plaintiff filed this action in federal court alleging that defendants failed to make reasonable accommodation for her condition, and that this failure was racial in nature. In addition, plaintiff claimed that the three positions offered her amounted to a constructive discharge thereby excusing her failure to accept any of the assignments. All parties agreed to have this case decided by a magistrate judge. See 28 U.S.C.A. § 636(c)(1).
 
 
 6
 At trial, plaintiff presented examples of supposedly comparable white deputies who were given assignments that accommodated the individual deputy's disability. Defendants argued, and the magistrate judge agreed, that each of these allegedly comparable deputies were in fact distinguishable from plaintiff, and that plaintiff had simply been treated in accordance with the Department's general policy of requiring deputy sheriffs to be fully functional.
 
 ANALYSIS
 
 7
 The finding of intentional discrimination is a finding of fact which, like other factual determinations by the lower court, will be reviewed only for clear error. Cooper v. Oak Rubber Co., 15 F.3d 1375, 1378-79 (6th Cir.1994).
 
 A. Racial Discrimination Claim
 
 8
 The analytical framework used in Title VII cases is well-established. Initially, the plaintiff bears the burden of establishing a prima facia case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Diehl v. Tele-Solutions, Inc., 57 F.3d 482, 483 (6th Cir.1995). Then, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. McDonnell Douglas Corp., 411 U.S. at 802. If the defendant is successful, the plaintiff must prove that the defendant's asserted rationale is merely a pretext for discrimination. Diehl, 57 F.3d at 483.
 
 
 9
 Plaintiff correctly notes that the lower court's final holding contradicts its initial assumptions about plaintiff's case. The lower court assumed without elaboration that defendant had set forth a prima facia claim. In light of plaintiff's theory of the case, the lower court must have assumed that plaintiff (1) is a member of a protected group, (2) was subject to an adverse employment decision, (3) was qualified for the position, and (4) was treated less favorably than similarly situated nonprotected employees. See Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir.1995) (setting forth elements of prima facia Title VII claim based on circumstantial evidence). The lower court later found as a factual matter that plaintiff was treated the same as similarly situated employees, and that allegedly comparable white employees who were treated differently were not in fact comparable. In effect, the court found that plaintiff had not set forth a prima facia case.
 
 
 10
 The lower court's holding remains valid notwithstanding its erroneous assumption. The lower court specifically found that plaintiff had not been treated differently than other similarly situated employees. This factual determination does not become clearly erroneous merely because it came at the end of the court's discussion rather than in the first stage of the burden shifting analysis. See United States Postal Serv. Bd. v. Aikens, 460 U.S. 711, 715 (1983) (failure to adhere strictly to burden shifting analysis harmless where district court has sufficient evidence to decide whether intentional discrimination occurred.)
 
 
 11
 Plaintiff next contends that the lower court erred in concluding that certain deputies who allegedly received preferential treatment were not similarly situated to plaintiff.
 
 
 12
 Plaintiff's proffered evidence, however, does not overcome the presumption in favor of the lower court's factual determinations. First, many of the deputies identified by plaintiff suffered no disability. Second, among those deputies who were assigned to positions on account of a disability, there is no evidence that any of those assignments were anything but temporary accommodations.
 
 
 13
 Because there is no clear error, we affirm the lower court's holding with respect to plaintiff's Title VII claim.
 
 B. Constructive Discharge
 
 14
 Plaintiff contends that defendants' efforts to reassign her to one of three positions amounted to a constructive discharge.
 
 
 15
 The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.
 
 
 16
 Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 65 (5th Cir.1980) (citation omitted). As noted above, defendants did not engage in discrimination. Therefore, there is no predicate illegal conduct upon which to base a claim for constructive discharge. Plaintiff's constructive discharge claim fails.
 
 CONCLUSION
 
 17
 The magistrate judge's decision is AFFIRMED.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 A keloid is a raised, firm, thickened red scar out of proportion to the amount of scar tissue required for normal repair and healing. Taber's Cyclopedic Medical Dictionary 968 (16th ed. 1989)