NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0246n.06

No. 24-3674

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

May 14, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| TINA WISE, | ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| CHILDREN'S HOSPITAL MEDICAL CENTER OF AKRON, | ) ) | OPINION |
| Defendant-Appellee. | ) ) ) | |

Before: CLAY, READLER, and DAVIS, Circuit Judges

**CLAY, Circuit Judge.** Plaintiff Tina Wise was terminated by her employer, Defendant Children's Hospital Medical Center of Akron, for failing to adhere to Defendant's COVID-19 testing and vaccination policies. Plaintiff subsequently brought suit against Defendant, alleging religious discrimination for failure to accommodate and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The district court granted summary judgment in favor of Defendant, which Plaintiff now appeals. For the reasons that follow, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

### A. Factual History

Defendant is a pediatric hospital located in Akron, Ohio. Defendant employed Plaintiff as a staff pharmacist, where Plaintiff worked from April 12, 1999, to June 14, 2022.

Plaintiff abstains from receiving vaccines. She received her last vaccine in 1990, and developed religious reservations towards vaccines in the early 2000's. It is her belief that "any medical intervention should only be used to cure illness or alleviate suffering and not performed on a healthy person." Wise Dep., R. 22-1, Page ID #243. Starting in 2013, Defendant exempted Plaintiff from receiving the flu vaccine.

The issue in this case centers on disease testing during the COVID-19 pandemic. COVID-19 proved to be particularly problematic for Defendant, as its young patients—especially children who were under the age of one or had compromised immune systems—fell into the high-risk category. Additionally, because many of Defendant's employees contracted the virus, Defendant faced significant staffing constraints. To reduce the effects of COVID-19, Defendant implemented a wide range of policies to limit the virus' spread. One such policy was the Related Employment Requirements Program, which required employees to either receive a COVID-19 vaccine or undergo regular testing. Defendant mandated employee participation in this program due to the age and immunocompromised status of many of Defendant's patients. The policy was later updated to require all employees to receive the vaccine, unless an employee submitted a religious or medical exemption request.

Plaintiff applied for an exemption to the policy, requesting that she be exempted from both the vaccine and testing requirements. She specifically wrote:

> I have long believed that any medical intervention should only be used to cure illness or alleviate suffering and not [be] performed on a healthy person. . . . Therefore, not only vaccinating myself for a potential future illness shows a misplaced trust and lack of faith in my God (as stated originally), but also subjecting myself to medical interventions, like the invasive COVID-19 intranasal testing, when I have no illness to cure and am in no need of alleviation from suffering, violates these deeply established beliefs.

R. 22-7, Page ID #371.

Defendant approved the request for the vaccine exemption. However, Defendant denied the testing exemption request, stating:

> The federal mandate requires health care providers such as [Defendant] to implement procedures that mitigate the spread of COVID-19 by unvaccinated staff members. Testing unvaccinated staff members who come onsite is the best way to accomplish this.
>
> Regardless of whether the testing requirement actually conflicts with a sincerely held religious belief, to exempt unvaccinated staff members who work onsite from the COVID-19 testing requirement would constitute an undue hardship. Your request is therefore denied.

R. 25-8, Page ID #1089. There were three primary reasons why Defendant believed that granting the testing exemption would cause undue hardship. First, Defendant was concerned about keeping its patient population safe. Second, there was a risk that by approving Plaintiff's request, Defendant would have to approve similar requests and thus increase the risk of spreading the virus. Third and finally, Defendant had an obligation under federal rules to institute mitigating efforts that reduced the risk posed by those employees who were approved for vaccine exemptions.

In February 2022, Plaintiff tested positive for COVID-19. Defendant's policy granted an unvaccinated employee a 90-day reprieve from testing if the employee tested positive for COVID. Plaintiff was therefore exempt from COVID-19 testing for the following 90 days. However, when her 90-day period expired, Plaintiff refused to resume testing. Plaintiff received two written warnings from Defendant: the first on June 1, 2022, and the second on June 6, 2022. After Plaintiff refused to meet Defendant's testing requirements, Defendant terminated Plaintiff's employment on June 14, 2022.

## B. Procedural History

On November 18, 2022, Plaintiff filed a complaint in the U.S. District Court for the Northern District of Ohio, alleging that Defendant violated Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e, *et seq.* She specifically alleged that Defendant's decision to fire Plaintiff because of her refusal to test constituted religious discrimination on both failure-to-accommodate and retaliation grounds. Defendant subsequently moved for summary judgment. The district court granted the motion, finding that Defendant had sufficiently demonstrated "that granting Plaintiff's testing exemption would have caused an undue hardship." Order, R. 33, Page ID #1221. Plaintiff now appeals the district court's determination.

## II. DISCUSSION

### A. Standard of Review

"We review a district court order granting summary judgment under a de novo standard of review, without deference to the decision of the lower court." *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014) (citation and quotation marks omitted). Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute of a material fact is genuine so long as the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (cleaned up). "When evaluating a motion for summary judgment, this Court views the evidence in the light most favorable to the party opposing the motion." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "This includes drawing all justifiable inferences in the nonmoving party's favor." *Id.* (citation and quotation marks omitted).

### B. Analysis

Where a plaintiff employee establishes a prima facie case of religious discrimination, "the burden shifts to the defendant employer to show that it could not reasonably accommodate the

employee without undue hardship." *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 516 (6th Cir. 2002). "The reasonableness of an employer's attempt to accommodate is determined on a case-by-case basis." *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994). To evaluate whether an employer could reasonably accommodate an employee, the Supreme Court has explained that "[w]hat is most important is that 'undue hardship' in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the commonsense manner that it would use in applying any such test." *Groff v. DeJoy*, 600 U.S. 447, 471 (2023). This Court has clarified that "an employer does not have to actually experience the hardship in order for the hardship to be recognized as too great to be reasonable." *Virts*, 285 F.3d at 519.

The district court did not reach the question of whether Plaintiff had established a prima facie case of religious discrimination. Instead, the district court proceeded to an undue hardship analysis, assuming *arguendo* that Plaintiff had met the prima facie elements. The district court ultimately concluded that "allowing the plaintiff to routinely come in for work at the Hospital while remaining unvaccinated and untested creates a heightened health risk that constitutes as an undue hardship." Order, R. 33, Page ID #1221. Accordingly, the district court held that Defendant had met the undue hardship burden and granted summary judgment in Defendant's favor on both Title VII claims. The district court's determination was without error.

Defendant has provided sufficient evidence to meet the undue hardship standard. Defendant's primary service is pediatric care, which necessarily involves caring for a particularly vulnerable population. As one of Defendant's physicians noted in his deposition, "viruses occupy . . . a very significant portion of pediatric illness," as "children are . . . highly vulnerable to infection." Brower Tr., R. 23-1, Page ID #453. The physician further noted that "children always

become a concern whenever we're dealing with any infectious scenario, especially one that we're not familiar with, and we're waiting for things to develop. So yes, children . . . will always remain a concern when we're talking about an infection, an infectious risk, because they are more vulnerable." *Id.* at Page ID #455. Furthermore, many of the children that Defendant treats fall into the most vulnerable categories of hospital patients: NICU babies, children with cancer, and children with compromised immune systems. Defendant provided testimony that to protect these vulnerable patients during the pandemic, one of its top priorities was "caring for and keeping its pediatric patient population safe." Larimore Decl., R. 26-1, Page ID #1131. To accomplish this, Defendant relied on both vaccinations and testing. The reason Defendant relied on testing was because without the assurance that an employee was COVID-negative, Defendant would have no way to ensure that infected individuals did not come into contact with vulnerable patients.

The general concerns regarding COVID-19 are more acute when viewed in the context of Plaintiff's specific role at the hospital. Plaintiff was exposed to up to 27 pharmacy employees each ten-hour shift, some of whom also worked on the hospital's patient floors. Plaintiff's shifts also overlapped with nearly every other pharmacy shift, and Plaintiff herself described the pharmacy as "contained." Wise Tr., 22-1, Page ID #176–178, 281. Viewed as a whole, the evidence paints a clear picture. Defendant cares for children—a category of individuals who are in-and-of-themselves an at-risk population. Many of these patients, such as children with cancer or NICU babies, are particularly vulnerable. To protect these individuals, the hospital took straightforward measures to ensure that the virus would not spread. And Plaintiff is precisely the kind of person who could easily spread the virus: she worked in a contained area, with a large number of people, for ten hours a day. Without regular testing, Defendant would have no way of

verifying whether this highly exposed employee was spreading an extremely transmissible virus to at-risk patients.

This case is nearly identical to a case recently decided by this Court, *Kizer v. St. Jude Child.'s Rsch. Hosp.*, No. 24-5207, 2024 WL 4816856 (6th Cir. Nov. 18, 2024). Much like Plaintiff in this case, the plaintiff in *Kizer* worked at a children's hospital and held religious objections to vaccinations. *Id.* at *1. The hospital mandated that all employees receive a COVID-19 vaccine because the hospital primarily treated "vulnerable pediatric patients." *Id.* The plaintiff applied for a religious exemption to the vaccine mandate, which the hospital denied "because her job required her to work in person in clinical areas and in contact with clinical people." *Id.* The plaintiff then brought suit under Title VII, alleging religious discrimination. *Id.* This Court affirmed the district court's grant of summary judgment, finding that the hospital could not accommodate the plaintiff without sustaining undue hardship. *Id.* at *3–8. Relevant to this case, the Court specifically noted that the hospital "presented evidence that to allow unvaccinated individuals to work on campus would pose a safety risk to the hospital's vulnerable juvenile patients (who were largely immunocompromised and unable to be vaccinated)." *Id.* at *6.

The factual similarities between this case and *Kizer* are apparent. Both Plaintiff and the plaintiff in *Kizer* worked in a children's hospital. And both Defendant and the hospital-defendant in *Kizer* did not accommodate religious exemptions because of the unique vulnerabilities of their child patients. Furthermore, the hospital-defendant in *Kizer* did not provide the option of either receiving the vaccine or undergoing regular testing; instead, the hospital mandated vaccines. *Id.* at *1, *6. Thus, Defendant in this case was given even more leeway by her employer than the plaintiff in *Kizer*.

Other circuits have reached similar conclusions as *Kizer*. In *Melino v. Boston Medical Center*, the First Circuit considered a case where a hospital implemented a COVID-19 vaccine requirement. 127 F.4th 391, 395 (1st Cir. 2025). The plaintiff in *Melino* requested a religious exemption to the mandate, which the hospital denied. *Id.* The First Circuit affirmed the district court's grant of summary judgment in favor of the hospital, finding that the hospital had sufficiently demonstrated undue hardship. *Id.* at 397–98. The hospital argued that allowing the plaintiff "to work unvaccinated would pose an undue hardship 'by increasing the risk of COVID-19 transmission amongst staff and patients.'" *Id.* at 397. Although the plaintiff's argument against undue burden turned only on whether "the vaccines worked"—a claim the First Circuit rejected because the hospital demonstrated that it relied on guidance from the Centers for Disease Control and Prevention, which stated that vaccines mitigate against "the effects and spread of COVID-19"—that opinion reveals why a more broad-based argument would also likely to have failed: the plaintiff worked in "COVID-19 units" treating "the overwhelming influx of seriously ill patients infected with the COVID-19 virus." *Id.* at 394, 397–98. In other words, that hospital, like Defendant here, faced an "increased risk of [employees] spreading the virus" to "medically vulnerable" patients. *Id.* at 394.

Both *Kizer* and *Melino* paint a clear picture. Hospitals facing the pressures of the pandemic faced immense pressure to keep their patients safe. And where a hospital presents evidence that accommodating an employee's exemption would threaten the hospital's most vulnerable patients—as is the case here—such exemptions constitute undue hardship.

Plaintiff provides a number of arguments in support of her contention that the district court erred. None are persuasive. First, Plaintiff argues that Defendant has only outlined hypothetical risks and has not identified any concrete harms that have materialized from lack of testing. But

this Court has noted that it is not required that an employer show a materialized harm in order to meet the undue hardship standard. *See DePriest v. Dep't of Hum. Servs.*, No. 86-5920, 1987 WL 44454, at *4 (6th Cir. Oct. 1, 1987) (per curiam). Furthermore, there was no evidence in *Kizer* that the defendant-hospital had sustained a concrete harm due to unvaccinated employees. *Kizer*, 2024 WL 4816856 at *1, *6. And this Court has previously held that "safety considerations are highly relevant in determining whether a proposed accommodation would produce an undue hardship on the employer's business. Title VII does not require that safety be subordinated to the religious beliefs of an employee." *Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 521 (6th Cir. 1975).

Second, Plaintiff contends that Defendant's policies were inconsistent and that the evidence fails to demonstrate that non-tested employees posed a risk to the hospital. Plaintiff notes, for example, that vaccinated employees were not required to take tests (despite their continued susceptibility to the virus) and that Plaintiff was not required to take a test for 90 days following her COVID-19 diagnosis (despite still posing a risk due to the infection). Yet as Defendant points out, the hospital's decision-making process was heavily influenced by the fluctuating recommendations of the scientific community, the changes in government rules and guidelines, and the development and availability of key resources. What Plaintiff asks, in essence, is for this Court to critically review the hospital's decision-making and determine whether those decisions were thoroughly consistent. That suggestion would require the Court to substitute the health and safety judgment of a hospital facing a rapidly evolving, highly uncertain novel pandemic for that of the Court's own hindsight judgment. Plaintiff does not point to, and we cannot identify, case law that permits the Court to engage in such Monday morning quarterbacking.

Third, Plaintiff asserts that Defendant "failed to provide evidence that accommodating Ms. Wise would cause staffing problems or lead to negative cumulative effects." Appellant Br., ECF No. 17, 21. Yet Defendant counters this argument by providing evidence to the contrary. For example, Defendant states that allowing Plaintiff to remain unvaccinated and untested would have resulted in staffing shortages. The logic of this argument is persuasive. Without a means to verify that Plaintiff was free of the virus, the hospital risked allowing an infected employee to enter a workspace that was both highly confined and filled with other employees. That would necessarily greatly increase the risk of spreading the virus within the workspace, thus resulting in staffing shortages. And if such staffing shortages continued, they would have profound effects on the hospital. During the height of the pandemic, for example, reduced staffing required Defendant to call in employees outside their normal working hours, shift employees from other locations to the central pharmacy, and employ the services of temporary staffing agencies. It is foreseeable that such problems would continue if Defendant allowed employees to remain unvaccinated and untested.

Additionally, Defendant notes that at least 35 other employees had requested the same religious exemption as Plaintiff, which would have "exponentially increased" the risk of spreading the virus throughout the hospital. Appellee Br. 37, ECF No. 20 (quoting Reihs Tr., R. 25-1, Page ID #1026–27) (alteration adopted). Again, Defendant's logic is persuasive. Without the verification of testing, one employee alone could cause the virus to spread rapidly throughout the hospital. But when multiplied across 35 employees, that risk necessarily grows at an exponential rate.

Taken as a whole, Defendant has presented a convincing case as to why it would face an undue hardship in accommodating Plaintiff. The hospital cares for particularly vulnerable patients

whose lives could be placed at risk if they were to contract the virus. It was thus paramount that Defendant take the highest precautions to ensure the safety of those patients. Verifying that employees were free of COVID-19, either through vaccination or testing, was an essential means by which Defendant could ensure that its employees were not spreading the virus to vulnerable patients. It would have therefore been an undue hardship for the hospital to accommodate Plaintiff's request to be exempt from both testing and vaccination. Defendant offers no convincing argument to the contrary, and this finding is directly in line with this Court's holding in *Kizer*. Considering that a finding of undue hardship is sufficient for Defendant to prevail in this matter, *see Virts*, 285 F.3d at 516, Plaintiff's argument fails.

### III. CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.